**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SHONDELL NEAL,**

> *Plaintiff,*

> v.

**EXPERIAN INFORMATION
SOLUTIONS, INC., REACH
FINANCIAL LLC, TRANS UNION,
LLC, *and* ZWICKER & ASSOCIATES,
P.C.,**

> *Defendants.*

Case No.: 8:25-cv-649

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Shondell Neal, ("Mr. Neal"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Experian Information Solutions, Inc. ("Experian"), Reach Financial LLC ("Reach Financial"), Trans Union, LLC ("Trans Union"), and Zwicker & Associates, P.C. ("Zwicker") (jointly, the "Defendants") stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action against Reach Financial and Zwicker for violations of the Florida Consumer Collection Practices Act, § 559.55, Fla. Stat., *et seq.* ("FCCPA"), against Zwicker for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), against Reach Financial for Breach of Contract, and against

Experian, Trans Union and Reach Financial for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for Plaintiff's FCRA and FDCPA claims arises under 28 U.S.C. § 1331, as the FCRA and FDCPA are federal statutes.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat., and Fed. R. Civ. P. 4(k).

5.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and/ or caused by the Defendants within Hillsborough County, Florida, which is in the Middle District of Florida.

## PARTIES

6.      Mr. Neal is a natural person residing in the City of Brandon, Hillsborough County, Florida.

7.      Mr. Neal is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c), the FDCPA, 15 U.S.C. § 1692a(3), and the FCCPA, § 559.55(8), Fla. Stat.

8.      Experian is an Ohio corporation, with a principal business address of 475 Anton Blvd., Costa Mesa CA 92626.

9.    Experian is registered to conduct business in the State of Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Rd. Plantation, FL 33324.

10.    Reach Financial is a Delaware limited liability company with a principal address of 180 Maiden Lane, Ste. 2801 New York, NY 10038.

11.    Reach Financial is registered to conduct business in the State of Florida, where its registered agent is Business Filings Incorporated, 1200 South Pine Island Road, Plantation, FL 33324.

12.    Trans Union is a Delaware limited liability company, with a principal business address of 555 West Adams Street, Chicago, IL 60661.

13.    Trans Union is registered to conduct business in the State of Florida, where its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

14.    Experian and Trans Union are Credit Reporting Agencies ("CRAs") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that they, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and use various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

15.    Zwicker is a Massachusetts professional association with a primary business address of 80 Minuteman Road, Andover, MA 01810.

16.     Zwicker is registered to conduct business in the State of Florida, where its registered agent is Glarixa Guzman, 1200 S Pine Island Road Suite 250, Plantation, FL 33324.

17.     Zwicker is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Section 559.55(7), Florida Statutes, in that it uses instrumentalities of commerce, including postal mail and the internet, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to other.

## FACTUAL ALLEGATIONS

### Mr. Neal's Initial Contract with NDR, Reach Financial & FinWise Bank

18.     Around July 25, 2022, Mr. Neal engaged the services of National Debt Relief, LLC ("NDR") to assist him with reducing his credit card debt.

19.     As part of NDR's services, Mr. Neal was instructed to stop making payments to his creditors, which included Capital One, Discover, Chase, Comenity Bank, and Synchrony Bank.

20.     Instead, Mr. Neal was advised to make monthly "debt consolidation" payments to NDR.

21.     In reliance on this instruction by NDR, Mr. Neal stopped paying his creditors and began making payments to NDR.

22.     After 180 days of non-payment, Capital One, Discover, Chase, Comenity Bank, and Synchrony Bank charged Mr. Neal's accounts to profit-and-loss ("charged off").

23.     Once charged off, the accounts no longer accumulated interest, making the effective rate 0%.

24.     The original balances of the charged-off accounts totaled $19,903.

25.     NDR claims to have obtained reduced settlement offers from the aforementioned creditors, totaling $12,725.82.

26.     In exchange for obtaining this proposed settlement, NDR charged Mr. Neal $4,975.75, plus $449.70 of other "fees," totaling $18,151.27.

27.     Mr. Neal made $3,789.85 worth of payments into his "debt settlement account," which left $14,361.42 required to be paid.

28.     Around April 2023, NDR suggested Mr. Neal obtain a loan from defendant Reach Financial, an entity primarily owned by the owners of NDR.

29.     Mr. Neal did so, obtaining a loan on or about April 19, 2023 (the "Loan").

30.     The stated lender on the Loan was FinWise Bank ("FinWise"), a state-chartered, federally-insured bank based in Utah.

31.     The Loan was marketed as a *personal loan* and was used by Mr. Neal to pay off balances on consumer credit cards which had been used for personal and household expenses.

32.     The Loan thus meets the definition of *Debt* under the FCCPA, § 559.55(6), Fla. Stat., and the FDCPA, 15 U.S.C. § 1692a(5).

33.     The interest rate on the Loan was 25.161%, with a repayment term of 70 months. Thus, Mr. Neal was required to repay $27,881.01 total.

34.     Combined with the $3,789.85 he had already paid into his debt settlement account, Mr. Neal was then in a situation where his cost to settle his original $19,903 worth of debt was at least $31,670.96.

35.     In addition, Mr. Neal's FICO® credit score dropped nearly 170 points due to the proliferation of charged-off accounts on his report, resulting in higher costs for insurance, financing, and other products based on a credit risk pricing model.

36.     By April 2023, each and every one of Mr. Neal's accounts had interest rates of 0%. Despite this, NDR counseled and persuaded Mr. Neal to re-finance debt that was already at 0% into a loan at 25.161% APR – roughly the same interest rate charged by Capital One, Discover, etc.

37.     Mr. Neal retained counsel to assist him in resolution of the matter.

38.     Around May 29, 2024, an agreement was signed by Mr. Neal, Reach Financial, FinWise and NDR, resolving Mr. Neal's loan balance and releasing Mr. Neal from any liability to Reach Financial, FinWise and NDR.[1]

39.     Reach Financial and FinWise also agreed to request deletion of any tradeline they had previously reported to any CRA, relating to Mr. Neal's loan.

---

[1] Mr. Neal is in possession of the contract; however, due to a confidentiality clause, Mr. Neal is not attaching the contract to this Complaint.

40.     Despite this agreement with Mr. Neal, on or about September 5, 2024, Reach Financial hired Zwicker to collect the $16,795.75 balance on his loan (the "Debt").

41.     Reach Financial was fully aware that Mr. Neal was represented by an attorney concerning this alleged debt, having just negotiated an agreement with Mr. Neal through his attorney.

42.     Zwicker sent a collection letter to Mr. Neal demanding payment of $16,795.75, stating the debt was owed to "CAPITAL ONE FACILITY." **SEE PLAINTIFF'S EXHIBIT A.**

43.     The letter also stated "You had a CAPITAL ONE FACILITY account serviced by Reach Financial LLC with account number (SIC) ending in 3137. The original creditor was FinWise Bank." ***Id.***

44.     On its face, the letter is false, as the debt was not owed at all and no creditor called "Capital One Facility" owned the account.

45.     In addition to Zwicker's collection attempts, Reach Financial continued to report Mr. Neal's account to Experian and Trans Union, severely damaging his credit scores.

## Mr. Neal's Dispute to Experian

46.     In November 2024, Mr. Neal disputed the Reach Financial tradeline to Experian.

47.     At the time of the dispute in November 2024, the Reach Financial tradeline had been last updated December 7, 2023.

48.    Experian requires its data furnishers to adhere to Metro 2 standards for credit reporting. Metro 2 is a uniform set of reporting standards and a *lingua franca* utilized by large nationwide CRAs for consumer reporting.

49.    Metro 2 standards require data furnishers to make monthly updates to balances, payment histories, etc., for any account that does not have a $0 balance.

50.    Reach Financial's failure to make a normal, monthly, in-cycle report about the debt from January 2024 onward should have put Experian on notice that the data it was reporting was no longer accurate or up to date.

51.    Upon receipt of Mr. Neal's dispute, Experian was required by the FCRA to conduct a reasonable investigation to determine whether the disputed information is inaccurate. *See* 15 U.S.C. § 1681i(a)(1)(A).

52.    However, rather than conduct any investigation of its own, Experian, upon receipt of Mr. Neal's dispute, sent Reach Financial an Automated Consumer Dispute Verification Request ("ACDV") through a system known as e-OSCAR, and asked it to make a reasonable investigation into the dispute.

53.    Reach Financial was thereafter required by the FCRA to make its own reasonable investigation into the dispute. *See* 15 U.S.C. § 1681s-2(b).

54.    Reach Financial returned the ACDV to Experian without any update, thus instructing Experian to continue to report that $16,796 was owed *as of December 7, 2023*.

55.    Reach Financial failed to conduct a reasonable investigation into Mr. Neal's dispute, as any reasonable investigation would have determined that the

balance was in fact the very same balance it had waived in May 2024, and that the entire tradeline should be deleted – facts which were objectively and readily verifiable as its own executive was a signatory to the agreement.

56.    Experian accepted the ACDV response from Reach Financial with little to no human review of its own into Mr. Neal's dispute.

57.    Mr. Neal's dispute specifically referred to the May 2024 agreement with Reach Financial resolving the balance of the account.

58.    Reach Financial supplied no additional information to Experian suggesting the reported information was accurate, merely checking a box labeled "verified as accurate."

59.     Experian's near-complete reliance on Reach Financial to verify disputed information without any additional investigation by the CRA was unreasonable.

### Mr. Neal's Dispute to Trans Union

60.    Mr. Neal's Reach Financial account reported to Trans Union with the creditor identified as "FinWise C/O Liberty Lending" – a name not utilized for years.

61.    Despite identifying the creditor as Liberty Lending, the tradeline contained Reach Financial's New York City address.

62.    Mr. Neal disputed Reach Financial's reporting to Trans Union in December 2024, reiterating no balance was owed due to a May 2024 agreement reducing the balance to $0 and calling for deletion of the tradeline.

63.    Trans Union, like Experian, simply sent an ACDV to Reach Financial.

64.    Reach Financial, on behalf of itself and FinWise Bank, verified its reported information was accurate on or about December 31, 2024, instructing Trans Union to continue to report $16,676 was owed by Mr. Neal.

65.    Trans Union, like Experian, accepted Reach Financial's verification of accuracy, conducting little to no investigation of its own.

66.    Trans Union's reinvestigation was thus unreasonable, as any reasonable investigation would have concluded that the balance on the account was $0, and that the account should be deleted per an agreement with Mr. Neal.

67.    Reach Financial's investigation into the December 2024 dispute to Trans Union was likewise unreasonable, for the same reasons.

## Subsequent Disputes

68.    A subsequent dispute to Experian on or around December 22, 2024, in which Mr. Neal reiterated, in detail, that he did not owe Reach Financial anything and that the entire tradeline should be deleted, resulted in Experian simply sending Reach Financial another ACDV.

69.    Reach Financial then confirmed its information was accurate, including the purported $16,796 balance, and confirmed that the tradeline should report with information last updated in December 2023.

70.    A December 2024 dispute to Trans Union resulted in substantially the same series of events occurring: Trans Union sent Reach Financial (or, somehow, Liberty Loans) an ACDV, which Reach Financial quickly verified as accurate.

71.    Trans Union accepted Reach Financial's verification of accuracy, even though Reach Financial failed to update its reporting and continued to report a balance from 2023 to Trans Union.

72.    Additional disputes to both Experian and Trans Union in January 2025 once again reiterated that nothing was owed to Reach Financial and that the entire tradeline should be deleted from his credit report per a written agreement signed by Reach Financial and FinWise.

73.    The January 2025 disputes once again resulted in nothing more than ACDVs sent by  Experian and Trans Union, who then accepted Reach Financial's investigation results and verification of accuracy.

74.    At no point did Reach Financial, Experian or Trans Union call, mail, text or e-mail Mr. Neal to ask him for additional information to support his claims.

75.    At no point did Reach Financial provide Experian or Trans Union with any information beyond the ACDVs it marked as "verified."

76.    At no point did Trans Union so much as identify or correct the fact it was not so much as reporting the correct name of the "creditor," Reach Financial, instead reporting it under a name not utilized for years.

### Zwicker sues Mr. Neal to Collect the Loan

77.    On November 26, 2024, Zwicker, on behalf of "REACH TRUSTS SEE LID ABOVE," filed a lawsuit against Mr. Neal in Hillsborough County Court, alleging $16,795.75 was owed, plus court costs. *See Reach Trusts See Lid Above v. Shondell Neal*, Case 24-CC-065490 (Hillsborough Co., Fla., filed Nov. 26 2024).

78.    No entity called "Reach Trusts See Lid Above" exists.

79.    That same day, Zwicker filed an unrelated lawsuit, seeking to collect a Reach Financial loan. *See Reach Financial LLC v. Ceasar Millas*, Case 24-CC-065489 (Hillsborough Co., Fla., filed Nov. 26, 2024).

80.    Zwicker filed a Motion to Amend Complaint in the *Millas* case, noting that the case was originally filed with a scrivener's error with the named plaintiff "Reach Trusts See Lid Above," when the plaintiff should have been "Reach Financial LLC as servicer for Reach ABS Grantor Trust 2023-1."

81.    Thus, on information and belief, the correct party suing Mr. Neal for his debt was Reach Financial, in its capacity as servicer for Reach ABS Grantor Trust 2023-1.

82.    As a result of Reach Financial's lawsuit against him, filed by Zwicker, Mr. Neal retained legal counsel, hiring The Law Offices of James Hubbard to represent him.

83.    Mr. Neal's attorney communicated with Zwicker, advising Zwicker that Reach Financial was suing Mr. Neal for a debt already stipulated to by Reach Financial as not owed.

84.    On February 5, 2025, Zwicker voluntarily dismissed the lawsuit against Mr. Neal.

85.    Reach Financial and Zwicker's conduct caused Mr. Neal to  incur attorneys' fees to The Law Offices of James Hubbard.

## The Loan Was Also Unlawful Due to an Illegal Interest Rate

86.    Compounding the aforementioned issues is that the Loan itself was subject to an unlawful rate of interest and was never enforceable against Mr. Neal to begin with.

87.    Section 687.071(2), Fla. Stat., renders extensions of credit made with an annual interest rate greater than 25% a misdemeanor in Florida.

88.    Section 687.071(7), Fla. Stat. indicates any such extension of credit, and logically any debt stemming from such extension of credit, is void and unenforceable.

89.    Any person who willfully makes a criminally usurious loan, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the loan. *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

90.    Indeed, even the recovery of the principal balance made at usurious rates is impermissible under Florida law. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

91.    Florida has taken usury one step further in the consumer loan context through the passing of the Consumer Finance Act, Chapter 516, Florida Statutes (the "Act").

92.    The Act requires licensure and state oversight for non-bank lenders issuing loans to Florida consumers in the amount of $25,000 or less. § 516.02(1), Fla. Stat.

93.    The Act further restricts the interest and fees which may be charged by a licensed consumer finance company.

94.    Section 516.02(c), Fla. Stat., indicates that any loan which fails to comply with the Act is unenforceable in Florida *even if valid wherever made.*

95.    Thus, Florida has made clear that in order to enforce a consumer loan against a Florida resident, a lender must be licensed in Florida and comply with the Consumer Finance Act.

96.    Reach Financial is not licensed as a Consumer Finance Company in Florida.

97.    While FinWise, as a state-chartered bank, is excluded from the Act, Reach Financial was the "true lender" of Mr. Neal's Loan, and is not exempted from the Act.

98.    In an effort to avoid state usury laws, such as Florida's, Reach Financial "partners" with FinWise.

99.    As a state-chartered, federally-insured bank, FinWise can charge the maximum interest rate of its home state, Utah, on all cards issued nationwide. *See* 12 U.S.C. § 1831d(a)

100.    However, FinWise had virtually nothing to do with the application process, underwriting, marketing, servicing, or collection of Mr. Neal's Loan.

101.    Moreover, at no point was FinWise's own capital at risk.

102.    Indeed, on information and belief, Reach Financial funds loans through a line of credit with Capital One – the entity mistakenly identified on Reach Financial's collection letter to Mr. Neal.

103.    Reach Financial owns the trademark under which Reach's loans are made.

104.    FinWise was only paid a small portion for its role in Mr. Neal's Loan.

105.    FinWise has numerous similar schemes active with other lenders, including Opportunity Financial, LLC, another FinTech company who charges over 30% APR on consumer loans.

106.    Monthly periodic statements for the Loan were produced by Reach Financial – not FinWise – and mailed or emailed to consumers from Reach Financial's address in New York.

107.    The lender's address in the loan agreement is Reach Financial's, not FinWise's.

108.    Both tradelines for the Loan listed Reach Financial's address.

109.    The address associated with the credit inquiry when Mr. Neal applied for the Loan was Reach Financial's address.

110.    Reach Financial was the only named plaintiff in the debt collection lawsuits filed by Zwicker for Reach Financial loans, including the lawsuit against Mr. Neal.

111.    Zwicker's complaint against Mr. Neal states, "Plaintiff (Reach Financial) was assigned Defendant's Loan after origination by FinWise Bank," *not* after charge-off or at a point in time after interest had been applied to the loan.

112.    Reach Financial, through its role in the "partnership" with FinWise, holds the predominate economic interest in Reach Financial's loans, including Mr. Neal's.

113.    Reach Financial is thus the true lender of the Loan, rendering it void due to the interest rate exceeding 25% and Reach Financial's lack of licensure.

114.    The Defendants' conduct caused Mr. Neal to suffer severe emotional distress, including fear and anxiety, as he had to spend time to procure legal counsel to defend himself from a lawsuit on a debt he thought resolved more than six months prior.

115.    Mr. Neal's emotional distress manifested physically, causing Mr. Neal loss of sleep.

116.    Mr. Neal has suffered ongoing damage to his credit history and scores and been denied credit he was otherwise qualified for – credit he needed to rebuild his credit reports and scores – because Reach Financial, Experian and Trans Union continued to report an account alleging $16,795 was owed when nothing at all was owed by him.

117.    Mr. Neal has hired the aforementioned law firm to represent him in this matter and has assigned his right to attorney fees and costs to the law firm.

**COUNT I**
**VIOLATIONS OF THE FCCPA, § 559.72(18), FLA. STAT.**
**Reach Financial**

118.    Mr. Neal adopts and incorporates paragraphs 1 – 117 as if fully restated herein.

119.   Mr. Neal was represented by an attorney with respect to the Reach Financial Debt.

120.   Mr. Neal's attorney communicated with counsel for Reach Financial extensively and Reach Financial was well aware Mr. Neal was represented by an attorney concerning any debt Reach Financial alleged owed.

121.   Despite this, Reach Financial hired Zwicker to sue Mr. Neal, and made multiple communications to Zwicker in connection with the collect of what Reach Financial alleged to be a consumer debt.

122.   Zwicker then communicated with Mr. Neal directly, causing a lawsuit to be served on him and mailing a collection letter.

123.   Zwicker was acting on behalf of Reach Financial, as its agent.

**WHEREFORE,** Mr. Neal respectfully requests this Honorable Court enter judgment against Reach Financial, for:

a.   Statutory damages of $1,000.00 pursuant to § 559.77(2), Fla. Stat.;

b.   Actual damages pursuant to § 559.77(2), Fla. Stat.;

c.   Injunctive relief preventing the Defendant from attempting to collect the alleged debt from Mr. Neal pursuant to § 559.77(2), Fla. Stat.;

d.   Reasonable costs and attorney's fees pursuant to pursuant to § 559.77(2), Fla. Stat.; and,

e.   Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCCPA, § 559.72(9), Fla. Stat.
## Reach Financial & Zwicker

124.    Mr. Neal adopts and incorporates paragraphs 1 – 117 as if fully restated herein.

125.    The Debt was an illegitimate and unenforceable debt due to an interest rate exceeding 25% per year.

126.    The Debt was also resolved with a $0 balance.

127.    Reach Financial & Zwicker violated § 559.72(9), Fla. Stat., when they asserted the Debt was owed, when it was void and also settled, in their collection letter and lawsuit against Mr. Neal.

128.    Reach Financial & Zwicker acted willfully, as both were in possession of the loan agreement clearly stated an illegal interest rate.

**WHEREFORE,** Mr. Neal respectfully requests this Honorable Court enter judgment against Zwicker and Reach Financial, for:

a.    Statutory damages of $1,000.00 *per Defendant* ($2,000.00 total), pursuant to § 559.77(2), Fla. Stat.;

b.    Actual damages pursuant to § 559.77(2), Fla. Stat.;

c.    Injunctive relief preventing the Defendants from attempting to collect the alleged Debt from Mr. Neal pursuant to § 559.77(2), Fla. Stat.;

d.    Reasonable costs and attorney's fees pursuant to pursuant to § 559.77(2), Fla. Stat.; and,

e.    Such other relief that this Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT
## Reach Financial

129.  Mr. Neal adopts and incorporates paragraphs 1 – 117 as if fully stated herein

130.  Reach Financial entered into a contract with Mr. Neal on or about May 29, 2024, pursuant to which it agreed to cease collection of the Debt and reduce any balance claimed owed to $0.

131.  Reach Financial failed to cease collection of the Loan as agreed, continuing to credit report a balance not actually owed, and going so far as to sue Mr. Neal for the purported "unpaid" balance.

132.  As a result, Mr. Neal was damaged, as Mr. Neal's credit scores and reports were impacted, and he had to hire legal counsel to defend him from Reach Financial's meritless lawsuit.

133.  Mr. Neal is entitled to attorney's fees and costs incurred in his attempt to enforce the terms of this agreement pursuant to the terms of the contract.

**WHEREFORE**, Mr. Neal respectfully requests that this Honorable Court enter judgment against Reach Financial for:

a.  Actual damages from Reach Financial's breach of contract;

b.  Attorney's fees and costs spent enforcing the agreement; and,

c.  Such other relief as this Court deems as proper.

## COUNT IV
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e
## Zwicker

134.    Mr. Neal incorporates paragraphs 1 – 117 as if fully stated herein.

135.    Zwicker violated **15 U.S.C. § 1692e** when they used false, deceptive, and misleading representations in connection with the collection of a debt by:

    a.  attempting to collect a balance when the debt was both void to usury and previously settled;

    b.  stating the Debt was owed to "CAPITAL ONE FACILITY," making it appear to Mr. Neal as if it was collecting a new debt, not one which he had previously settled;

    c.  stating in a lawsuit a debt was owed to "REACH TRUSTS SEE LID ABOVE," a non-existent entity and again making it appear to Mr. Neal as if it was collecting a new debt, not one which he had previously settled.

**WHEREFORE,** Mr. Neal respectfully requests that this Honorable Court enter judgment against Zwicker, for:

    a.  Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.  Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.  Such other relief that this Court deems just and proper.

## COUNT V
## <u>VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f(1)</u>
## <u>Zwicker</u>

136.    Mr. Neal incorporates paragraphs 1 – 117 as if fully stated herein.

137.    Zwicker violated **15 U.S.C. § 1692e** when they collected an amount not authorized by contract or law, the Reach Financial loan.

138.    Zwicker mailed Mr. Neal a collection letter and filed a lawsuit on behalf of Reach Financial, seeking to collect a debt which was void ab initio due to usury, and settled with $0 balance owed.

**WHEREFORE,** Mr. Neal respectfully requests that this Honorable Court enter judgment against Zwicker, for:

a.    Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT VI
## <u>WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)</u>
## <u>Reach Financial</u>

139.    Mr. Neal incorporates paragraphs 1 – 117 as if fully stated herein.

140.    Reach Financial violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation after receiving notice of a dispute from a CRA.

141.   Reach Financial received notice of at least six separate disputes, three each from Experian and Trans Union, from November 2024 through January 2025.

142.   Reach Financial verified its reported information as accurate in response to each dispute, including the alleged balance, when the debt was settled in May 2024.

143.   Reach Financial's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations.

144.   Reach Financial is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Neal's actual damages and statutory damages of up to $1,000 per violation, plus punitive damages, attorneys' fees, and costs.

**WHEREFORE**, Mr. Neal respectfully requests this Honorable Court enter judgment against Reach Financial for:

a.   The greater of Mr. Neal's actual damages and statutory damages of $1,000.00 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT VII
## NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
## Reach Financial

145.   Mr. Neal incorporates paragraphs 1 – 117 as if fully stated herein.

146.   Reach Financial owed Mr. Neal a legal duty to conduct a reasonable investigation into Mr. Neal's dispute upon receiving notice from Experian and Trans Union.

147.   Reach Financial breached this duty when it failed to conduct a reasonable investigation into Mr. Neal's disputes on at least six separate occasions, as any reasonable investigation would have determined that the Debt was settled and/or void due to usury.

148.   Reach Financial thus violated 15 U.S.C. § 1681s-2(b), and pursuant to 15 U.S.C. § 1681o, is therefore liable for Mr. Neal's actual damages, attorneys' fees, and costs.

**WHEREFORE,** Mr. Neal respectfully requests this Honorable Court enter judgment against Reach Financial for:

a.   Mr. Neal's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

**COUNT VIII**
**EXPERIAN'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681i(a)(1)(A)**

149.   Mr. Neal adopts and incorporates paragraphs 1 – 117 as if fully stated herein.

150.   Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable reinvestigation upon receipt of Mr. Neal's disputes into the Reach

Financial account. A reasonable investigation would have concluded that the past-due balance was settled and thus reporting inaccurately.

151.    Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to investigate disputes, and its policies could reasonably be foreseen to cause harm Mr. Neal.

152.    Experian is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Neal's actual damages and statutory damages of up to $1,000 per violation, plus punitive damages, attorneys' fees, and costs.

**WHEREFORE,** Mr. Neal respectfully requests this Honorable Court enter judgment against Experian for:

a.    The greater of Mr. Neal's actual damages and statutory damages of $1,000.00 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT IX
## EXPERIAN'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681i(a)(1)(A)

153.    Mr. Neal adopts and incorporates paragraphs 1 – 117 as if fully stated herein.

154.    Experian owed Mr. Neal a legal duty to conduct a reasonable investigation into Mr. Neal's disputes of the Reach Financial tradeline.

155.    Experian breached this duty when it failed to conduct a reasonable reinvestigation into Mr. Neal's disputes, as any reasonable reinvestigation would have determined that the Debt was settled, with no balance owed.

156.    Experian's breach of this duty amounts to a negligent violation of 15 U.S.C. § 1681i(a)(1)(A), and as a result, Experian is liable to Mr. Neal, pursuant to 15 U.S.C. § 1681o, for Mr. Neal's actual damages, attorneys' fees, and costs.

**WHEREFORE,** Mr. Neal respectfully requests this Honorable Court enter judgment against Experian for:

a.    Mr. Neal's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## COUNT X
## TRANS UNION'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681i(a)(1)(A)

157.    Mr. Neal adopts and incorporates paragraphs 1 – 117 as if fully stated herein.

158.    Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable reinvestigation upon receipt of Mr. Neal's disputes into the Reach Financial account. A reasonable investigation would have concluded that the past-due balance was settled and thus reporting inaccurately.

159.    Trans Union's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to investigate disputes, and its policies could reasonably be foreseen to cause harm Mr. Neal.

160.    Trans Union is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Neal's actual damages and statutory damages of up to $1,000 per violation, plus punitive damages, attorneys' fees, and costs.

**WHEREFORE,** Mr. Neal respectfully requests this Honorable Court enter judgment against Trans Union for:

a.    The greater of Mr. Neal's actual damages and statutory damages of $1,000.00 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT XI**
**TRANS UNION'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681i(a)(1)(A)**

161.    Mr. Neal adopts and incorporates paragraphs 1 – 117 as if fully stated herein.

162.    Trans Union owed Mr. Neal a legal duty to conduct a reasonable reinvestigation into Mr. Neal's disputes of the Reach Financial tradeline.

163.    Trans Union breached this duty when it failed to conduct a reasonable reinvestigation into Mr. Neal's disputes, as any reasonable reinvestigation would have determined that the Debt was settled, with no balance owed.

164.    Trans Union's breach of this duty amounts to a negligent violation of 15 U.S.C. § 1681i(a)(1)(A), and as a result, Trans Union is liable to Mr. Neal, pursuant to 15 U.S.C. § 1681o, for Mr. Neal's actual damages, attorneys' fees, and costs.

**WHEREFORE,** Mr. Neal respectfully requests this Honorable Court enter judgment against Trans Union for:

a.    Mr. Neal's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Mr. Neal hereby demands a jury trial on all issues so triable.

Respectfully submitted on March 18, 2025, by:

**SERAPH LEGAL, P. A.**

<u>/s/ *Bryan J. Geiger*</u>
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@SeraphLegal.com
2124 W Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## <u>ATTACHED EXHIBITS</u>
A      Zwicker's Collection Letter to Plaintiff